Rutland Jewish Ctr., Inc. v. Estate of Sylvia Kesman, No. 369-5-12 Rdcv (Teachout, J., Aug. 29, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                              **CIVIL DIVISION**
**Rutland Unit**                                                **Docket No. 369-5-12Rdcv**

**RUTLAND JEWISH CENTER, INC.**
**RUTLAND JEWISH CEMETERY,**
    **Appellants**

    **v.**

**ESTATE OF SYLVIA KESMAN,**
    **Appellee**

## SMALL CLAIMS APPEAL
### DECISION

Appellants Rutland Jewish Center, Inc. and the Rutland Jewish Cemetery appeal from a judgment of the Small Claims Court dated April 19, 2012 in favor of the Estate of Sylvia Kesman in the amount of $4,200.00 plus costs. Judgment was based on a written decision of the Honorable Jean H. Coloutti, including findings of fact and conclusions of law, following an evidentiary hearing. The judgment was for the amount paid by the Estate to Appellants for the purchase of a grave and for fees for rabbinical oversight services related to the burial of Sylvia Kesman in the Rutland Jewish Cemetery. The Estate claims it owed nothing for these items and paid only under duress in order for the burial to proceed in a timely manner. On appeal, Appellants claim errors of law and fact as reviewed below.

It is not the function of the Superior Court to substitute its own judgment for that of the Small Claims Court Judge. Rather, the role of the Superior Court is to determine whether or not the evidence presented at the hearing supports the facts that the Judge decided were the credible facts, and whether or not the Judge correctly applied the proper law and procedure. In this case, Appellants primarily claim errors of application of the law to the facts, most of which are undisputed.

Sylvia Kesman and her husband were members of the Rutland Jewish Center beginning in 1940, and regularly paid annual membership dues. They knew that if they remained members in good standing and paid their annual dues for 20 years, they would earn the right to be buried in the Rutland Jewish Cemetery at no additional charge. In 1985, a specific fee schedule was published providing for costs of "purchase or reservation" of graves in the Cemetery. The cost for members in good standing for over 20 years was $50 per grave, and included reservation of a particular site and perpetual care. By contrast, the cost for non-members residing in Rutland County was $2,000. The Kesmans paid $150 for the reservation of three sites and received a written receipt. No notice was given that further charges would be added for a prepaid burial.

In 1987, Daniel Kesman died, and was buried in his reserved plot. No fees were assessed for the plot or access to it or for rabbinical services associated with his burial. In 1988, Sylvia Kesman paid for the delivery and installation of her foot stone on her burial plot in the cemetery next to her husband in the family plot, where a large upright headstone engraved "Kesman" had been installed.

In 2006, the RJC Board adopted a new fee schedule with higher costs. The price of a plot for a non-member rose to $3,100. A rabbinical services fee for non-members was added. The RJC rabbi was required to be available to oversee burials as part of his contract in order to ensure compliance with conservative Jewish law, whether he performed services or not.

Also in 2006, there was general internal turmoil in the RJC. Sylvia Kesman, who was then almost 90 years old, ceased her membership after approximately 60 years.

She died in 2011. Under Jewish law, burial must be accomplished within a short period of time, usually within a day or two of death. The family contacted the RJC to make arrangements for access to the plot, and were informed that the gates to the cemetery would not be opened unless and until $4,200 was paid, $3,100 for the burial plot and an additional $1,100 as a required fee for RJC oversight services. The fact that there was any charge was disputed but paid under clear protest so that the burial could proceed under Jewish law. The RJC rabbi did not perform the services, although he was apparently in the vicinity, but not in view.

The Estate then brought this action in Small Claims Court for recovery of the amount paid, and judgment issued in favor of the Estate for the full amount.

*Express contract*

Appellants claim the Court erred in finding an express contract existed as of 1985 that required the RJC to, upon Sylvia Kesman's death, provide the Estate with the burial plot selected and paid for in 1985, including access to it, without any additional charges including no additional charges for rabbinical services. Appellants make two arguments. First, they argue that the evidence showed that the $150 paid in 1985 was for reservation of specified sites only, and not payment for the plot itself, and did not include rabbinical services provided by RJC. This is a challenge to the sufficiency of the evidence on those findings of fact. Second, they argue that the facts do not support that there was a meeting of the minds sufficient to create an enforceable contract.

As to the first point, Appellants argue that the evidence shows that in 1985, the Kesmans only reserved specific plot sites and did not purchase the grave sites or prepay for rabbinical services or have a contract that no further payment would be required. The language of Plaintiff's Exhibit 2, the 1985 notice of charges, states that it gives charges for "purchase or reservation." Based on Exhibits 1A and 2 and testimony, including the testimony that in 1987 there were no additional charges for Daniel Kesman's grave site, there was sufficient evidentiary basis for the fact that the money paid in 1985 only needed to be to secure individual plots, as the

2

balance of any cost for a grave site was already paid for by the fact that the Kesmans had earned their plot by having been members in good standing for over 20 years as of that date.

As to the legal issue, there were sufficient facts for the Court to conclude that a contract was formed as of April 1985 and what its terms were: the Kesmans accepted the offer extended by RJC in 1985 set forth in Exhibit 2, and paid the necessary full costs for the specific lots A, B, and C in Section 15 of Block B of the Cemetery as well as access to use those plots without further costs to the RJC at the times of their deaths. Receipt of the consideration was acknowledged in writing by RJC, showing satisfaction on the part of the Kesmans of their obligations under the contract. It was an executory contract as to RJC, with performance on the part of RJC to be to provide the three plots, including access, without further cost, at the time of the Kesmans' deaths. That is what happened with respect to Mr. Kesman at the time of his death. There was a sufficient evidentiary and legal basis for the ruling of law that there was a completed contract in 1985, and that the contract bound RJC as of 1985 to complete its performance at the time of Sylvia Kesman's death. The evidence supports the ruling that there was never any modification of the contract during or after 2006.

*Promissory Estoppel*

The Judge gave a second basis for the judgment. Without specifically stating that it was an alternative legal basis for the decision, she identified the three elements of promissory estoppel and ruled that the facts showed that all three were met: (1) there was a promise made by RJC in 1985 in the form of the fee schedule that if Sylvia Kesman paid $50 for a specific lot and maintained membership for more than 20 more years, she would be entitled to ownership of the specific plot and burial without further cemetery charges at the time of her death; (2) Sylvia Kesman relied on this promise in 1985 when she paid $50 and again in 1988 when she incurred expense to have her footstone erected on the grave; and (3) injustice could be avoided only through enforcement of the promise, as it would be unjust for Sylvia Kesman to be deprived of the benefit of the promise she relied on. Therefore, the Court determined that she already owned the plot and was entitled to access to it and burial without additional expense under the doctrine of promissory estoppel.

It is not uncommon for judicial decisions to include alternative grounds for a judgment, so that in the event that an appellate court rejects one ground, the result may also rest on an alternative ground. Efficiency in the use of resources by both the courts and the parties is best promoted by addressing all possible grounds at one time in order to avoid piecemeal decision-making and delay. It is also not conceptually inconsistent, depending on the facts of a case, for the facts to support both contract and a non-contract causes of action, as they do in this case. While in some fact scenarios, the two doctrines might be mutually exclusive, they are not in this case. The express contract of 1985 is the first basis for the judgment. The basis for promissory estoppel is the promise made in 1985 followed by reliance in the form of payment plus membership for 21 years plus the erection of a foot stone. There is factual support for each of the elements of each of the separate bases for judgment.

*Rabbinical Oversight Fees*

The facts show that the $1,100 charged by RJC was not for the performance of rites, but for oversight services to ensure that rituals were done according to the conservative Jewish law that is followed by the RJC. The Judge found that the Estate did not owe the charge imposed by the RJC, but paid it under duress and was therefore entitled to recover it. Appellant argues that it was not under duress or an improper charge because it was the amount that had been charged to all nonmembers under the fee schedule in effect for over four years at the time.

The facts show that RJC would not open the gates of the cemetery unless the amount was paid. The Estate paid it so that burial could take place within the time requirements of Jewish law. It was not error for the Judge to characterize this as duress. An analogy would be if a store patron agreed to pay a storekeeper a price of $100 for something needed on Day 4, and paid the $100 accordingly on Day 1, but then the storekeeper refused to allow the removal of the item from the store on Day 3 unless the patron paid an additional $50 service fee, which was a new fee imposed on customers for the first time on Day 2. It would not be unreasonable for the patron to pay the additional $50 in order to obtain the benefit of the bargain, which was the use of the item at the proper time it was needed. The patron would still be entitled to seek recovery of the unagreed-upon $50 as a means of enforcing the contract.

Whether or not the Judge properly characterized the circumstances of payment as duress according to legal doctrine, or was simply using the word according to its meaning in every day usage is immaterial. The ruling of the Judge was that on the basis of both contract law and the doctrine of promissory estoppel, the Estate had no obligation to pay the money and therefore had a right to recover it in a court action. The charge could be a perfectly legitimate one for estates other than Sylvia Kesman's. It was not a legitimate charge to her estate because of the fact that any services related to use of the cemetery for burial had been prepaid by her during her life. When the Estate paid the $1,100, it did not waive its right to seek enforcement of the contract according to its terms, which it was entitled to pursue in this case.

*Conclusion*

For the foregoing reasons, the Judgment of the Small Claims Court dated April 19, 2012, is *affirmed*.

Dated at Rutland, Vermont this 28th day of August, 2012.

_____
Hon. Mary Miles Teachout
Superior Judge

4